UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BOBBY REED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 3:15-cv-177 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION & ORDER

Bobby Reed seeks review of the Social Security Administration's decision to deny his application for Social Security Disability benefits and Supplemental Security Income benefits. Reed claims he has been disabled since January 26, 2012, due to a combination of among other things, degenerative disc disease of the cervical and lumbar spines, obesity, carpal tunnel syndrome and depression. Following a hearing before an Administrative Law Judge, Reed's application for benefits was denied on the grounds that he could still perform a significant number of jobs in the national economy. Because the ALJ erred in not including all of Reed's credible mental limitations supported by the medical record when posing his hypothetical to the Vocational Expert ("VE"), the decision of the Commissioner of the SSA will be remanded on that issue.

### Background

Reed's pain complaints date back to at least 2007, and he was eventually referred to Dr. Cha, a pain management specialist, in January 2011 for treatment. (DE 6 at 312,

353.) Dr. Cha reported that Reed "describes [his] symptoms as a dull, aching sensation with an occasional sharp, stabbing component that spreads across the neck into the bilateral shoulders. . . . It is rated as high as 10/10 on the pain scale." (*Id.* at 353.) He further noted that Reed's pain had "become quite debilitating in nature," causing "severe functional limitations." (*Id.*) After undergoing bilateral cervical medial branch blocks for treatment of neck pain, Reed reported immediately experiencing increased headache pain. (*Id.* at 350.) He also said in a February 2011 follow-up that "[h]is medications have only slightly helped with the pain." (*Id.*) Dr. Cha prescribed more medication (*id.* at 351), but in a July 2011 follow-up Reed reported continuing "severe neck pain" and "frequent recurrent headaches associated with [it]." (*Id.* at 342.) In November 2011, after multiple follow-up visits, Reed continued to report neck pain "radiating up to the back of the head" and increased lower back pain. (*Id.* at 338.)

Dr. Cha continued treating Reed's pain through August 2013 but with mixed results: sometimes the pain decreased in response to medication, but it ultimately returned, especially after branch blocks. (*Id.* at 330–38, 383, 392–94, 428–42.) In a June 2013 letter, Dr. Cha opined that the pain has "made it almost impossible" for Reed to "consistently maintain a job because of the limitations from his pain." (*Id.* at 391.) Dr. Cha recounted Reed's treatment history in a September 2013 letter and concluded that "[b]ased on the long-standing history of his treatment with our clinic as well as dependence on long-term opioid pain medication management, it appears that [Reed] is not likely to recover any further from his chronic pain issues related to his spine

pathology." (*Id.* at 546.)

The Spinal Impairment Questionnaire that Dr. Cha completed diagnoses Reed's conditions as cervical spondylosis which is a osteoarthritis in the spine. He was also diagnosed with severe and ongoing neck pain (called "cervicalgia"), as well as low back pain (called "lumbago"), and other related ailments. (*Id.* at 548.) Dr. Cha noted that Reed's pain or other symptoms are periodically severe enough to interfere with attention and concentration and that Reed can only tolerate a low work stress environment, among other limitations. (*Id.* at 552–53.)

After Reed filed for disability benefits in June and July 2012, alleging a disability onset date of January 26, 2012 (*id.* at 211–18, 227–34), consulting physician Dr. Inabnit saw Reed and performed a disability examination. (*Id.* at 374–81.) After noting Reed's history of "chronic neck pain and upper extremity paresthesias" (*id.* at 374), Dr. Inabnit concluded that Reed has evidence of cervicalgia, degenerative disc disease at C5-C6 and C6-C7, "smoker," chronic low back pain, mild bulging disc at L4-L5, and posterior ligamentous thickening and facet arthropathy at L2-L3 through L4-L5. (*Id.* at 381.) Dr. Inabnit recommended "a lateral chest x-ray, pulmonary function study, and a smoking cessation program" and suggested he "would treat him conservatively." (*Id.*) Neither Dr. Cha nor Dr. Inabnit completed a residual functional capacity assessment.

Reed's disability claims were initially denied. (*Id.* at 135–52.) After his claims were denied upon reconsideration (*id.* at 158–171), Reed requested an administrative hearing in January 2013 (*id.* at 172–73) which ultimately took place on November 19,

3

2013 (*id.* at 65). The ALJ that presided over the hearing issued a decision denying benefits. (*Id.* at 23–34.) The ALJ employed the standard five-step analysis. (*Id.*) At step one, the ALJ confirmed that Reed had not engaged in substantial gainful activity since his application date. (*Id.* at 26.) At step two, the ALJ found Reed suffers from the following severe impairments: degenerative disc disease of the cervical and lumbar spines; obesity; status post remote bilateral carpal tunnel syndrome release and epicondyle surgeries; and depression. (*Id.*) At step three the ALJ found that Reed's conditions do not satisfy any listed impairment, but found that Reed has "moderate difficulties in maintaining concentration, persistence or pace" based on "[Reed's] reports of concentration/attention difficulties as well as headache complaints after his injection therapy treatment for his back pain. It also accounts for any recurrent back pain." (*Id.* at 26–27.) At step four, in analyzing Reed's residual functional capacity, the ALJ found that Reed could:

> [P]erform less than the full range of sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a). The claimant could lift/carry and push/pull a maximum of 10 pounds; sit for a total of about six hours in an eight-hour workday and stand/walk for a total of about two hours in an eight-hour workday. The claimant's ability to stand is limited to increments of 30 minutes at one time. The claimant could never climb ladders, ropes, scaffolds, but he could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. He could frequently handle and finger bilaterally. He must avoid concentrated exposure to vibrations. The claimant could understand, remember and carryout simple instructions; he could make judgments on simple work related decisions; he could interact appropriately with coworkers and supervisors in a routine work setting; he could respond to usual work situations and to changes in a routine work setting.

(*Id.* at 27.) The ALJ gave Dr. Cha's opinions "some weight" (*id.* at 31–32) and found

4

Reed's "statements concerning the intensity, persistence and limiting effects of [his] symptoms . . . not entirely credible" (*id.* at 28) when analyzing Reed's RFC. At step five, the ALJ found Reed could not perform past relevant work but there were a sufficiently significant number of jobs in the national economy he could perform. (*Id*. at 32–33.) The ALJ's specific RFC findings, the hypothetical the ALJ posed to the VE to determine if there were a significant number of jobs in the national economy Reed could perform, and relevant testimony at the hearing will be recounted in my discussion below as necessary.

Reed argues that the ALJ should have given Dr. Cha's opinions controlling weight, that the ALJ erred in evaluating Reed's credibility, and that the hypothetical the ALJ posed to the VE was insufficient. Because I find there is sufficient ground to remand this case on the argument concerning the hypothetical, I will only address that argument in this opinion. But upon remand, the ALJ should address Reed's other arguments as appropriate.

**Discussion**

My review of an ALJ's decision to deny social security benefits is limited to determining whether the decision is supported by substantial evidence. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). "Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion." *Id.*

Turning to the issue in this case, "both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by

5

the medical record." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (collecting cases). The hypothetical question the ALJ poses to the VE "must account for documented limitations of 'concentration, persistence, or pace,'" but the ALJ does not have to use those exact words. *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009); *see Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). But, if the ALJ doesn't use words to that effect, I cannot assume the VE is "apprised of such limitations unless she has independently reviewed the medical record," for instance by reviewing the claimant's medical history or hearing testimony about the claimant's limitations omitted from the hypothetical. *Yurt*, 758 F.3d at 857–58. Thus in the absence of a VE's independent review of the medical records, a hypothetical must incorporate medically-supported limitations of concentration, persistence, or pace in some way. *See Varga*, 794 F.3d at 814; *see also O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010) (upholding ALJ's hypothetical that "specifically excluded those tasks that someone with the claimant's limitations would be unable to perform" without using the words "concentration, persistence, or pace").

So, the ALJ's hypothetical to the VE presents one threshold issue and two secondary issues: (1) whether, for the purposes of the hypothetical, Reed has documented limitations of concentration, persistence, or pace; (2) whether the VE was independently apprised of Reed's limitations; and (3) whether the ALJ's hypothetical adequately incorporated such limitations. The Commissioner argues that Reed doesn't have a moderate limitation in concentration, persistence, or pace for the purposes of his RFC, or alternatively, that such limitation was incorporated into his RFC and the ALJ's

6

hypothetical to the VE. (DE 15 at 22–25.) Reed, for his part, argues that the ALJ's hypothetical was insufficient because it failed to reflect his moderate limitation. (DE 9 at 16–17.)

### (1) The ALJ found "moderate limitation in concentration, persistence or pace" and incorporated this finding into his RFC analysis

The ALJ found at steps two and three of the evaluation process that Reed has "moderate difficulties in maintaining concentration, persistence or pace," which the ALJ alternatively phrased as a "moderate limitation in concentration, persistence or pace." (DE 6 at 26.) The ALJ based his finding on "the claimant's reports of concentration/attention difficulties as well as headache complaints after his injection therapy treatment for his back pain. It also accounts for any recurrent back pain." (*Id.*) The Commissioner doesn't dispute the validity of this finding. The Commissioner instead argues that this determination at steps two and three is only "used to rate the severity of mental impairment(s)" at those steps, SSR 96-8p, 1996 WL 374184, at *4, and thus doesn't have to be included in the ALJ's RFC analysis or hypothetical. (DE 15 at 22.)

The problem with this reasoning is that the hypothetical "must incorporate *all* of the claimant's limitations supported by the medical record." *Varga*, 794 F.3d at 813 (emphasis added) (holding ALJ's hypothetical insufficient because it failed to incorporate claimant's step two and three limitation findings based on the medical record). And the ALJ has to "build an accurate and logical bridge from the evidence to

7

his conclusion," *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (citations omitted), meaning the ALJ's decision cannot be internally inconsistent. *See Dupuis v. Comm'r of Soc. Sec.*, No. 1:14-CV-00307-SLC, 2016 WL 1237881, at *9 (N.D. Ind. Mar. 30, 2016).

It would be internally inconsistent for the ALJ to find at steps two and three Reed has "moderate difficulties in maintaining concentration, persistence or pace" and then not incorporate that finding into later steps. If the medical record supports finding Reed has this limitation at steps two and three – and it plainly does — it follows that this limitation still exists at steps four and five. The SSA regulations are in line with this reasoning. "The mental RFC assessment used at steps 4 and 5," for example, "requires a *more* detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings." SSR 96-8p, 1996 WL 374184, at *4 (emphasis added).

The ALJ, in formulating mental limitations with regard to Reed's RFC, considered Reed's "depression treated with medications, his history of headaches[,] and his pain complaints." (DE 6 at 30.) He also considered Reed's "short attention span," his "complaints of headaches connected to the back injections and his medications," his need to "re-read sentences in his book two to three times," and Dr. Cha's opinion that Reed "would experience pain periodically that would interfere with his attention/concentration." (*Id.* at 31.) The ALJ further stated that he "placed mental restrictions in the residual functional capacity" (DE 6 at 30) and that he did so by assigning a sedentary activity level (*id.* at 31). But as discussed in more detail below,

8

sedentary activity level isn't sufficient to account for the mental limitations the ALJ found. So irrespective of what the ALJ says he did or didn't do, what's really at issue here is whether the language of the ALJ's hypothetical—and by extension, his RFC determination—*actually* accounts for Reed's moderate limitation in concentration, persistence, or pace.

### (2) The ALJ's hypothetical did not adequately incorporate Reed's limitations of concentration, persistence, or pace

The ALJ posed the following hypothetical to the VE:

> [P]lease assume an individual of the same age, education, and work experience as the claimant. This individual would be capable of performing at the light exertional level; however, it is somewhat modified. The individual is able to lift up to 20 pounds occasionally, lift and carry 10 pounds frequently, would be able to sit for about six hours out of eight, would be able to stand or walk for about two hours out of eight, for a combined total of eight hours per day. However, the standing would be limited in increments not to exceed one half-hour at one time. The individual is to never climb ladders, ropes, or scaffolds, but is able to occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. The individual, with respect to handling or fingering bilaterally is limited to frequent but not constant handling or fingering. The individual, from an environmental perspective, is to avoid concentrated exposure to vibrations. There are no other physical limitations . . . . The mental is as follows[:] the individual is able to understand, remember, and carry out simple instructions. The individual is able to make judgments on simple work-related decisions. The individual is able to interact appropriately with supervisors and coworkers in a routine work setting, and the individual is able to respond to usual work situations and to changes in a routine work setting. Those are all the limitations for hypothetical number 1.

(DE 6 at 100–01.) The ALJ further restricted the hypothetical by limiting the individual to lifting up to 10 pounds occasionally, but the reduction in weight did not change the VE's determination that there are other jobs in the regional economy that the hypothetical individual could perform. (*Id.* at 101–02.) This second hypothetical was

9

apparently the basis for the ALJ's RFC determination. (*Id.* at 27.)

To summarize, the ALJ found Reed has a "moderate limitation in concentration, persistence or pace" based on Reed's "reports of concentration/attention difficulties as well as headache complaints after his injection therapy treatment for his back pain" and "any recurrent back pain." (*Id.* at 26.) The ALJ then "placed mental restrictions in the [RFC]" based on Reed's "history of headaches and pain complaints," (*id.* at 30), and described an individual that "is able to understand, remember, and carry out simple instructions" in his hypothetical (*id.* at 101). But a hypothetical restricting an individual to carrying out simple tasks does not adequately account for a claimant's limitations in concentration, persistence, and pace. *Varga v. Colvin*, 794 F.3d 809 at 815–16 (7th Cir. 2015); *see Yurt v. Colvin*, 748 F.3d 850, 855, 858–59 (7th Cir. 2014) (holding hypothetical that described an individual that can "remember and carry out unskilled task[s] without special considerations" did not account for claimant's limitations in concentration, persistence, or pace); *Craft v. Astrue*, 539 F.3d 668, 677–78 (7th Cir. 2008) (holding ALJ's hypothetical that restricted claimant to unskilled, simple work did not account for his difficulty with concentration); *Young v. Barnhart*, 362 F.3d 995, 1004 (7th Cir. 2004); *see also* SSR 85-15, 1985 WL 56857 at *6 (1985) ("[B]ecause response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job.")

The Commissioner responds by suggesting that the ALJ's RFC findings and hypothetical "reflect that he repeatedly found that [Reed's] limitations were grounded only in concentration, not persistence or pace." (DE 15 at 22–23.) Essentially, the Commissioner is arguing that the ALJ found Reed has moderate difficulties with concentration, persistence, *or* pace—not *and* pace. The court in *Varga* rejected this argument because "[t]he word 'or' has an inclusive sense (A or B, or both)" and is used inclusively in this context. 794 F.3d at 815 (citations omitted). "[T]he agency forms from which these terms emanate often lump concentration, persistence, and pace together as an umbrella category" for "one broad category of functioning." *Id.* at 815–16. While the ALJ did specifically mention Reed's "reports of concentration/attention difficulties" among other factors (DE 6 at 26, 30–31), that doesn't mean he excluded difficulties with persistence or pace from his finding.

This is not a case where the ALJ's hypothetical "specifically exclude[s] those tasks that someone with the claimant's limitations would be unable to perform." *Simila v. Astrue*, 573 F.3d 503, 521–22 (7th Cir. 2009); *cf. Capman v. Colvin*, 617 Fed. Appx. 575, 579 (7th Cir. 2015) (holding RFC preventing claimant from working in proximity with others "adequately addressed [claimant's] deficiencies in concentration, persistence, and pace" because they "stem[med] from [claimant's] anxiety attacks" caused by proximity). The ALJ found, based on the record before him, that Reed has moderate difficulties with concentration, persistence, or pace brought on not only by back pain but also by injection therapy treatment for back pain. (DE 6 at 26, 30.) While the physical

portion of the ALJ's hypothetical restricts the individual to a "light exertional level" (*id.* at 101), that doesn't account for the mental limitations brought on by Reed's pain and its treatment. *See Dupuis v. Comm'r of Soc. Sec.*, No. 1:14-CV-00307-SLC, 2016 WL 1237881, at *10 (N.D. Ind. Mar. 30, 2016); *Gomez v. Colvin*, 73 F. Supp. 3d 921, 932 (N.D. Ill. 2014) (finding ALJ's limitation to unskilled, low-stress work did not account for claimant's concentration problems that stemmed from pain); *Copeland v. Astrue*, 776 F. Supp. 2d 828, 845 (N.D. Ind. 2011). And as I discussed before, limiting Reed to understanding, remembering, and carrying out simple instructions won't do the trick. There was just nothing incorporating Reed's pain or headaches into the hypothetical, unlike in *Simila v. Astrue*, 573 F.3d 503 (7th Cir. 2009) where the court held a hypothetical that specifically mentioned the claimant's headaches and chronic pain syndrome was adequate to orient the VE to the claimant's moderate difficulties with concentration, persistence, or pace. *Id.* at 522.

The Commissioner argues that *Johansen v. Barnhart*, 314 F.3d 283, 286 (7th Cir. 2002) is controlling. (DE 15 at 23.) I am mindful that the ALJ's step two and three determinations are separate from and should not be confused with the ALJ's RFC findings. SSR 96-8p, 1996 WL 374184, at *4. But the hypothetical in *Johansen* was sufficient, despite the ALJ's omission of a consultative physician's finding of three areas of moderate limitation, because the same physician "'went further' and 'translated' his findings into a specific RFC assessment opining that the claimant was still able to perform low-stress, repetitive work." *Yurt v. Colvin*, 758 F.3d 850, 858 (7th Cir. 2014)

(citing *Johansen*, 314 F.3d at 288–89). Essentially, the *Johansen* hypothetical's "description of 'repetitive, low-stress work' specifically excluded positions likely to trigger the panic disorder that formed the basis of the claimant's limitations in concentration, persistence, and pace." *Id.* (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619).

Substantial evidence doesn't support the phrasing of the ALJ's hypothetical because it doesn't account for Reed's mental limitations stemming from his pain and its treatment. As found by the ALJ, Reed's pain and its treatment forms the basis of his limitation in concentration, persistence, and pace. Thus the hypothetical couldn't have excluded positions that Reed can't perform because of his mental limitations.

**(3) The VE was not independently apprised of Reed's limitations**

Any problems in the way the ALJ posed the hypothetical to the VE could be beside the point if the VE based his conclusions on sources outside of the hypothetical itself, such as the claimant's medical records or testimony. But if the record indicates that the VE didn't "base[] his conclusions on anything other than the ALJ's hypotheticals," then my review must be confined to the ALJ's hypotheticals. *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009). Here, as in *Simila*, it appears the VE was present during the entire hearing. (DE 6 at 67 ("After you testify, we're going to have some testimony from a [VE], Mr. Gusloff, who is seated right here.").) But the VE didn't indicate that he based his opinions on his review of the medical record or hearing of testimony, (*see* DE 6 at 100–03), and the hypothetical restricts the VE to considering the hypothetical facts (*see id.* at 101 ("Those are all the limitations for hypothetical number

13

1.").) So I am confined to reviewing the ALJ's hypothetical to see whether it adequately incorporated Reed's moderate difficulties with concentration, persistence, or pace. *See Simila*, 573 F.3d at 521. As discussed above, I find it did not.

**Conclusion**

For the reasons above, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this opinion.

**SO ORDERED**.

ENTERED: June 28, 2016

s/Philip P. Simon  
PHILIP P. SIMON, CHIEF JUDGE  
UNITED STATES DISTRICT COURT